# EXHIBIT B

Case 1:03-cr-10381-NG  Document 52-3  Filed 05/04/2005  Page 1 of 10

Prepared by: E. ANDERSON

DATE: 08/08/2002
BORROWER: MARY ELLEN LABRECQUE
CASE #:
LOAN #: 20134876
PROPERTY ADDRESS: 25 BARTON STREET UNIT #3
NEWBURYPORT, MA 01950-

COUNTRYWIDE HOME LOANS, INC.
BRANCH #877
5898 CONDOR DRIVE   MP-189
MOORPARK, CA 93021-
(800)304-1330
Br Fax No.: (805)553-6316

## HOME EQUITY CREDIT LINE AGREEMENT AND DISCLOSURE STATEMENT

Date: AUGUST 08, 2002

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
COUNTRYWIDE HOME LOANS, INC.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
COUNTRYWIDE HOME LOANS, INC.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period,") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 4 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 11.B, 11.D, 12.B or 15.A below.) You will not make any loan before the fourth business day following the signing of this Agreement, except to the extent of proceeds of this loan that are for the purchase or initial construction of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 12.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) paying closing costs and finance charges in accordance with paragraph 7.C below; (iii) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (v) any other method or procedure you establish.

**3. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.**

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement monthly. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, subject to an Account Termination Fee or Low Balance Fee, as applicable, as described in paragraphs 7.D and 7.E, respectively. If I pay my entire "New Balance" shown on my periodic statement for any billing cycle by the "Payment Due Date," any

CONV
● HELOC - MA Agreement & Disclosure
2C7411MA (00/02)

Page 1 of 9

Initials

*23991*                                   *020134876000002C741*

LOAN #: 20134876

periodic finance charge incurred from the first day of the next billing cycle until the posting of my payment will appear on my periodic statement for the next billing cycle.

D. I may pay all or any part of my "New Balance" using an Equity Credit Line Check ("Check"). If I use a check to pay all or any part of my New Balance, I understand that:

(1) The amount of the Check will be treated as any other advance is treated under the terms and conditions of my Account. My check will not be honored if I do not have sufficient availability on my Account.

(2) If I make a payment using a Check, my principal balance will not decrease. The principal balance will increase by the amount of the Check.

(3) Interest will accrue on the total increased principal balance when I use a Check to make a payment on my Account.

(4) You may not use a Check to make a payment once the Draw Period ends. That is, a Check may not be used to make a payment during the Repayment Period.

E. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 12.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

F. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

G. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

4. CREDIT LIMIT. My Credit Limit under this Agreement is $ 30,000.00 . I promise not to request loans which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

5. ANNUAL PERCENTAGE RATE.

[X] A. The Initial Daily Periodic Rate is 0.01027 %. The Initial ANNUAL PERCENTAGE RATE is 3.750 %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 5.C below had been used. In which event the Initial Daily Periodic Rate would be 0.01918 % and the Initial ANNUAL PERCENTAGE RATE would be 7.000 %. These discounted rates will be in effect from the date of this Agreement until 11/29/2002 . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.C below.

[ ] B. The Initial Daily Periodic Rate is N/A % and the Initial ANNUAL PERCENTAGE RATE is N/A %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (beginning with the first day of the first billing cycle after my "discounted" rate has expired, if applicable) according to the following procedure: The ANNUAL PERCENTAGE RATE shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of The Wall Street Journal as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 5.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the ANNUAL PERCENTAGE RATE divided by 365.

D. The "Margin" to be used under paragraph 5.C above to determine my ANNUAL PERCENTAGE RATE is 2.250 percentage points.

CONV
• HELOC - MA Agreement & Disclosure
2C7412MA (04/02)                                           Page 2 of 9

LOAN #: 20134876

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The ANNUAL PERCENTAGE RATE will never increase above 18.000 % or the maximum rate permitted by state law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

6. FINANCE CHARGE. I agree to pay a finance charge on my Account as explained below.

A. Periodic FINANCE CHARGE.

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that you pay the check. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(2) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other FINANCE CHARGES.

(1) Points FINANCE CHARGE.

I agree to pay a Points FINANCE CHARGE of $ 0.00 at the time I sign this Agreement.

(2) Broker Fee FINANCE CHARGES.

I agree to pay Broker Fee FINANCE CHARGES of $N/A at the time I sign this Agreement.

(3) Settlement Agent FINANCE CHARGES.

I agree to pay the following Settlement Agent FINANCE CHARGES at the time I sign this Agreement:

Attorney's Fee $ 0.00

(4) Miscellaneous FINANCE CHARGES.

I agree to pay the following miscellaneous FINANCE CHARGES at the time I sign this Agreement:

LOAN #: 20134876

**7. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this Agreement if I have not paid such charge by the "Payment Due Date" shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) [X] I agree to pay an annual fee of $ 75.00 which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $ 20,000.00 from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[ ] I will not be charged an annual fee on this loan.

(2) If I fail to make my "Minimum Payment Due" within fifteen (15) days of the "Payment Due Date," I agree to pay a late fee of 3% of the outstanding balance of my account or $10.00, whichever is less.

(3) For each Equity Credit Line Check written for less than $250 which you honor, I agree to pay a Processing Fee of $5.

(4) I agree to pay a Return Item Fee of $10 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---|
| Appraisal | $ 250.00 |
| Doc Prep - Title | $ 150.00 |
| Credit Report | $ 25.00 |
| Recording | $ 60.00 |
| Title Search | $ 140.00 |
| Notary 3rd Party | $ 100.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 725.00 |
| Total Paid by Borrower | $ 0.00 |

C. I may elect to pay the closing costs described in paragraph 7.B above and the finance charges described in paragraph 6.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. [ ] If checked, this Mortgage is in a first lien position, and if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien within the first nine months after I have signed this Agreement, I agree to pay an Account Termination Fee of the lesser of $350 or three months's interest to cover your costs of processing and administering my Account.

[X] If checked, this Mortgage is in a junior lien position, and if I pay in full and terminate my Account with you and ask you to satisfy my mortgage lien on or before the fifth (5th) anniversary of this Agreement, I agree to pay an Account Termination Fee of $ 350.00 to cover your costs of processing and administering my Account.

[ ] I will not be charged an Account Termination Fee on this loan.

E. [ ] In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two years of my Account. I further agree to pay a Low Balance Fee of $40 for each monthly billing cycle during the first two years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 7.D.

CONV
HELOC - MA Agreement & Disclosure
2C7414A4A (09/02)

Page 4 of 9

LOAN #: 20134876

**8. REAL PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Mortgage (the "Mortgage") covering my dwelling located at
25 BARTON STREET UNIT #3, NEWBURYPORT, MA 01950-
(the "Real Property"). The Mortgage is security for my current and future obligations under this Agreement. This Mortgage is in a ☐ first ☒ junior lien position. I will continue to be obligated to make payment to you under this Agreement even if the Real Property is damaged or destroyed and whether or not any insurance proceeds are available.

**9. SECTION INTENTIONALLY OMITTED.**

**10. REAL PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**11. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.**

   A. You may take the actions listed in paragraph 11.B below during the period that any of the following events or conditions occur:

      (1) the value of the Real Property declines significantly below its appraised value for the purposes of my Account;

      (2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

      (3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 13 below;

      (4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

      (5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Mortgage such that the value of the lien of the Mortgage is less than 120% of my Credit Limit;

      (6) the maximum Annual Percentage Rate set forth in paragraph 5.E above is reached.

      (7) The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

   B. During the period in which a condition described in paragraph 11.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A above or 12.A below have occurred.

   C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Mortgage is not impaired.

   D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 11.A above or 12.A below has occurred.

   E. If an event or condition described in paragraph 11.A above occurs which is also an event or condition described in paragraph 12.A below, your rights and remedies described under paragraph 12.B below apply and supersede your rights described in this paragraph 11.

CONV
HELOC - MA Agreement & Disclosure
2CN16MA (08/02)

Page 6 of 9

Initials: [signature]

LOAN #: 20134876

**12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. You may take the actions listed in paragraph 12.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3) I sell or transfer title to the Real Property without first obtaining your written permission;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5) I act or fail to act and as a result a lien senior to the lien of the Mortgage is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security document;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Real Property. Such action or inaction could include, for example, the following:

    (a) A judgment is filed against me;

    (b) I commit waste or otherwise destructively use or fail to maintain the Real Property;

    (c) I die and I am survived by another person obligated as a Borrower under this Agreement;

    (d) I move out of the Real Property; or

    (e) I break any promise made in this Agreement (including those set forth in paragraph 13 below) or in the Mortgage.

B. If an event described in paragraph 12.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4) you may foreclose the Mortgage;

(5) you may reduce my Credit Limit; and

(6) you may take any other action permitted by this Agreement, by law or in equity.

**13. MY IMPORTANT OBLIGATIONS.** I agree that:

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

LOAN #: 20134876

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property.

F. I will not use or allow use of the Real Property for any illegal purpose.

G. I will not move out of the Real Property.

H. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Mortgage such as:

(1) my promise not to exceed my Credit Limit; and

(2) my "Important Obligations" listed in the Mortgage.

14. COSTS OF COLLECTION. Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charge will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

15. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.

A. <u>Termination by Me</u>. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 15.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 11.D above.

B. <u>Termination by You</u>. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 11.B or 12.B above or my exercise of my suspension or termination rights under paragraphs 11.D or 15.A above.

C. <u>Effect of Termination</u>. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 7.D above.

16. CHANGES TO AGREEMENT.

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1) If the original Index is no longer available, you may change the Index and Margin;

(2) you may make any change I agree to in writing;

(3) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans;

(4) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method; and

(5) you may make any changes to this Agreement if an event under paragraph 12.A above occurs.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

LOAN #: 20134876

**17. OTHER PROVISIONS.**

A. <u>Third Parties</u>. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me, I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. <u>Additional Credit Reports and Appraisals</u>. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. <u>Tax Deductibility</u>. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. <u>Applicable Law</u>. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Real Property is located.

E. <u>Application of Payments</u>. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. <u>Failure to Perform</u>. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. <u>Waiver of Jury Trial</u>. I waive my right to a jury trial.

H. <u>Complete Understanding of the Parties</u>. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. <u>Waiver of Notice</u>. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. <u>Meaning of Words</u>. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. <u>Payment Marked "Payment in Full"</u>. I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to
COUNTRYWIDE HOME LOANS, INC.
4500 Park Granada, Calabasas, CA 91302-1613

L. <u>Enforcement</u>. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. <u>Notices</u>. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 17.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at
COUNTRYWIDE HOME LOANS, INC.
4500 Park Granada, Calabasas, CA 91302-1613
or to such other address as you may designate by written notice to me as provided in this paragraph 17.M.

CONV
● HELOC - MA Agreement & Disclosure
2C7418MA (09/07)

Page 9 of 9

LOAN #: 20134876

**N. Riders/Addenda.** The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

[X] No Cost Addendum

[ ] _____ Addendum

[ ] _____ Rider

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT" AND THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE."

Witness: _____

Borrower: *Mary Ellen Labrecque* 8-9-2012 Date

Witness: _____

Borrower: _____ Date

Borrower: _____ Date

Borrower: _____ Date